# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PAXTON, | **1:18-cv-00132-LJO-SKO** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO COMPEL ARBITRATION (ECF No. 12)** |
| MACY'S WEST STORES, INC., an Ohio corporation doing business in the State of California, | |
| **Defendant.** | |

## I. <u>INTRODUCTION</u>

Plaintiff Michael Paxton ("Paxton" or "Plaintiff") brings this action against his former employer, Defendant Macy's West Stores, Inc. ("Macy's" or "Defendant"), alleging violations of California's Fair Employment and Housing Act and for wrongful termination in violation of public policy. ECF No. 1 (Notice of Removal), Ex. 1 (Complaint ("Compl.")). Plaintiff originally filed this action in Fresno County Superior Court, and Defendant removed to this Court on January 25, 2018. On July 17, Defendant filed a motion to compel arbitration of Plaintiff's claims. ECF No. 12. Plaintiff opposed, arguing that there was no valid arbitration agreement because he had never consented to the arbitration provision, that the agreement was unconscionable and unenforceable, and that Defendant had waived its right to enforce the arbitration agreement. ECF No. 13 ("Opp."). Defendant replied. ECF No. 14. The motion is ripe for review and is suitable for disposition without oral argument pursuant to Local Rule 230(g).

## II. <u>BACKGROUND</u>

**A.**     <u>Factual And Procedural Background</u>

Plaintiff worked at Macy's as a furniture salesperson from January 25, 2001, until January 23, 2015. At the time that he began his employment at Macy's, the company did not have a mandatory arbitration program. Beginning in the fall of 2003, Macy's rolled out a dispute resolution program known as Solutions InSTORE ("SIS") to address workplace disputes. ECF No. 12–2, Declaration of Cynthia Ripak ("Ripak Decl."), ¶ 5. Each store division set up informational meetings about the SIS program with small groups of employees. *Id.* ¶ 16. All employees were required to attend one of the informational meetings, and Macy's forwarded information about the SIS program to employees who were unable to attend those meetings. *Id.* ¶ 17. The written materials included a letter from the then-President and CEO of Macy's, along with a brochure entitled "Early Dispute Resolution." *Id.* The brochure informed employees that if they wanted to be excluded from the arbitration program, they would be required to complete a form that would be mailed to their homes. *Id.* Ex. B at 10. The informational meetings also included a video that explained the SIS program. *Id.* ¶ 18.; *id.* Ex. D at 8-10 (discussing arbitration). Plaintiff does not recall whether he attended one of the informational meetings. ECF No. 12-3, Ex. A (June 20, 2018 Deposition of Michael Paxton ("Paxton Depo.")) at 9:5-14.

On September 26, 2003, Macy's mailed the SIS Plan Document, an election form, and a return envelope to all employees active as of August 31, 2003, including Plaintiff. Ripak Decl. ¶¶ 23-25. The forms were mailed to the same address to which Macy's sent all employment-related mail to Plaintiff, including documents relating to health and welfare benefits and payroll information. *Id.* ¶ 20. Though Plaintiff agreed that the address to which Macy's sent the SIS documents was his home address during this period and that he has received other mail from Macy's at that address, he testified at his deposition that he did not recall whether he received the documents. Paxton Depo. at 6:22-8:23, 21:4-21. Plaintiff submitted a declaration in his opposition to the motion to compel, stating that he "did not receive arbitration material from [SIS] in 2004 or 2005 through the mail" and "d[id] not recall receiving an opt-

out notice from [SIS]."  ECF No. 13-1, Declaration of Michael Paxton ("Paxton Decl."), ¶ 5.  Macy's had a policy for tracking undelivered mail related to the SIS program and has no record that the mail sent to Plaintiff was not delivered.  Ripak Decl. ¶ 28.

Plaintiff did not return the election form declining to participate in the arbitration program.[1]  That form provided that the deadline to postmark the opt-out form was October 31, 2003.  Plaintiff did not mail anything to the SIS office, Paxton Depo. at 19:21-23, and accordingly, Macy's never sent Plaintiff a letter confirming receipt of the opt-out notice, Ripak Decl. ¶ 34.

In January, 2004, Macy's sent to every employee who failed to return the opt-out form a brochure confirming the arbitration selection.  *Id*. ¶ 35.  Macy's mailed a copy of the form to Plaintiff's home address, *id*. ¶ 36, though Plaintiff testified at his deposition that he does not recall whether he received the form, Paxton Depo. at 22:17-21.  In the declaration submitted in connection with the briefing on this motion, Plaintiff testifies that he did not receive a notice advising him that he was part of the SIS period.  Paxton Decl. ¶ 6.

In the fall of 2004, Macy's provided employees a second opportunity to opt out of the arbitration agreement.  Macy's sent all employees who had not opted out of the arbitration provision a mailing that

---

[1] The form stated in pertinent part:

> Over the last several weeks, you have been learning a lot about our new early dispute resolution program, Solutions InSTORE.  We hope you have taken every opportunity to understand the features of this program.  We know that both you and the company will benefit from early and fair resolution of workplace issues and we are excited about the positive impact Solutions InSTORE will have throughout our company.  In this packet, you will find a Plan Document which is a more comprehensive description of the Solutions InSTORE program.  In addition, while Steps 1-3 will be available and apply to everyone, this form serves as an election form only if you choose **not to be covered** by the benefits of Arbitration, Step 4 of the Solutions InSTORE program.  Please read this information carefully.

> [. . .]

> Complete and return this form ONLY IF YOU <u>DO NOT</u> WANT TO BE COVERED BY THE BENEFITS OF ARBITRATION during your career with the company.  *In this case, your completed form must be returned to the Office of Solutions InSTORE and postmarked no later than October 31, 2003*.  We will send you confirmation that your form was received.

Ripak Decl. Ex. F.

included a brochure, newsletter, opt-out form, and a return envelope. Ripak Decl. ¶¶ 38-40. Macy's also sent this mailing to Plaintiff's home address, *id*, ¶ 41, and Plaintiff also does not recall whether he received these documents, Paxton Depo. at 22:5-23:11. Plaintiff did not return the opt-out form. Ripak Decl. ¶ 44.

Plaintiff was terminated from Macy's on January 23, 2015, which he contends was related to a medical condition requiring that he have an ileostomy pouch. At the time of his termination, Macy's presented him with a settlement offer in exchange for the release of his employment claims against Macy's. Paxton Decl. ¶ 9. In 2015, Plaintiff filed a complaint with the California Department of Fair Employment and Housing, *id*. ¶ 12, which issued a right-to-sue letter on September 17, 2016, Compl. ¶ 7.

Plaintiff filed suit in Fresno County Superior Court on September 18, 2017, and served Defendant on December 27, 2017. Defendant filed its answer on January 24, 2018, asserting as the first defense that the claims were subject to arbitration, and removed the case to this Court the next day. ECF No. 1 at 1; *id*. at PDF p. 36. The parties filed a joint scheduling report on April 24, 2018, in which Defendant asserted that the claims were subject to arbitration. ECF No. 6 at 3. Plaintiff sat for a deposition limited to the validity of the arbitration agreement on June 20, 2018. ECF No. 12-3 ¶ 3; Paxton Depo. at 26:3-6. Defendant moved to compel arbitration on July 17, 2018. ECF No. 12.

**B.** **The Arbitration Agreement**

The SIS program contains four steps. *Id.* ¶ 8. First, under the "Open Door" policy, employees are encouraged to bring their concerns to a supervisor or local management team member. *Id*. ¶ 9. Second, if unsatisfied with the response, an employee may submit a written request to human resources for an investigation into the matter. *Id*. Third, if unsatisfied with the findings of the investigation and if the matter involves legally protected rights, an employee may request an official investigation by either the Office of SIS or a Peer Review Panel. *Id*. Fourth, if the matter is still unresolved after completion of the official investigation, it is to be resolved through binding arbitration. *Id*.

Aspects of arbitration under the SIS include: (a) the filing fee is equal to one day's worth of wages for the employee, not to exceed $125; the arbitrator, however, may exempt the employee from the filing fee; (b) Macy's will have an attorney present only if the employee decides to have an attorney present; (c) Macy's will reimburse the employee for some of the legal fees incurred; (d) discovery is permitted;[2] (e) the arbitrator is jointly selected by the parties and may grant any relief available under applicable law; (f) the arbitrator is required to submit a written decision specifying the remedies that are appropriate; and (g) mutuality: Macy's must resolve all its disputes through arbitration. *Id.* ¶¶ 13–14.

### III. <u>LEGAL STANDARD</u>

Under the Federal Arbitration Act, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 "create[s] a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). While the FAA reflects a "liberal federal policy favoring arbitration," *AT & T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone*, 460 U.S. at 24), "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "[T]he federal law of arbitrability under the [FAA] governs the allocation of authority between courts and arbitrators. Because the FAA mandates that 'district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed,' the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute

---

[2] Permitted discovery includes document disclosures, three depositions for each side, and up to 20 interrogatories to the opposing party (each of which may include a document request). The arbitrator is also empowered to authorize more discovery.

1  at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal citations and

2  emphasis omitted) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir.

3  2000)).  In construing arbitration agreements, courts must "apply ordinary state-law principles that

4  govern the formation of contracts."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

5                                          **IV. DISCUSSION**

6  **A.      Validity Of Arbitration Agreement**

7          To determine the validity of an arbitration agreement, general state-law principles of contract

8  formation and interpretation apply.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995);

9  *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).  Under California contract law,

10  the elements for a viable contract are (1) parties capable of contracting; (2) their consent; (3) a lawful

11  object; and (4) sufficient cause or consideration.  *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d

12  457, 462 (9th Cir. 1999).

13          The parties were capable of contracting, and the arbitration agreement related to a lawful matter.

14  There is also no dispute as to whether the arbitration agreement was supported by sufficient

15  consideration.  *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (an employer's

16  promise to be bound by the arbitration process itself serves as adequate consideration); *see also Strotz v.*

17  *Dean Witter Reynolds*, 223 Cal. App. 3d 208, 216 (1990) ("Where an agreement to arbitrate exists, the

18  parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide

19  consideration for each other."), *overruled on other grounds by Rosenthal v. Great Western Fin. Secs.*

20  *Corp.*, 14 Cal. 4th 394 (1996).  In opposition, Plaintiff only contests the second prong, arguing that he

21  never consented to the arbitration agreement.

22          "In California, '[g]eneral principles of contract law determine whether the parties have entered a

23  binding agreement to arbitrate.'"  *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55

24  Cal. 4th 223, 236 (2012).  A party's acceptance of an agreement to arbitrate may be express, but a

25  signed agreement is not necessary to a valid arbitration agreement, and a party's acceptance may be

implied. "An arbitration clause within a contract may be binding on a party even if the party never actually read the clause." *Id*.

The common-law mailbox rule "provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time." *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001). California courts have repeatedly applied this rule to find a valid arbitration agreement, including in cases involving the SIS program. *See Castro v. Macy's, Inc.*, No. C 16-5991 CRB, 2017 WL 344978, at *3 (N.D. Cal. Jan. 24, 2017) (finding valid arbitration agreement where Macy's submitted "declarations and documents explaining the machines used to mail the arbitration agreement materials, and describing the efforts taken to ensure mail receipt" and the plaintiff "offer[ed] no evidence beyond her mere denial of receipt"); *Daugherty v. Experian Info. Sols., Inc.*, 847 F. Supp. 2d 1189, 1196 (N.D. Cal. 2012) (applying unrebutted presumption of mailbox rule to find valid arbitration agreement); *Chavez v. Bank of Am.*, No. C 10-653 JCS, 2011 WL 4712204, at *8 (N.D. Cal. Oct. 7, 2011) (finding valid arbitration agreement because plaintiff's sworn statement that she "'does not recall' receiving anything in the mail" about the arbitration provision does not defeat presumption of receipt by mail).

Defendant argues that Plaintiff agreed to the arbitration provision by receiving notice of the SIS program and not opting out. In the declaration submitted with his opposition to the motion to compel arbitration, Plaintiff states that he did not receive arbitration material in 2004 or 2005 and that he does not recall receiving an opt-out notice from the SIS program. Declaration of Michael Paxton ("Paxton Decl.") ¶ 5. He also states that he did not receive a notice advising him that he was part of the SIS program after the opt-out period had expired. *Id*. ¶ 6. Defendant responds that the declaration conflicts with his deposition testimony, where he testified that he could not remember whether he received the arbitration materials. *See* Paxton Depo. at 20:3-23:11 (repeatedly testifying that he did not recall whether he received the SIS arbitration materials). Defendant argues that Plaintiff's claims not to have received the arbitration materials fall flat because "[t]he general rule in the Ninth Circuit is that a party

cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). *See also George v. Morris*, 736 F.3d 829, 843-44 (9th Cir. 2013) (same); *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 421 (2000) ("[Defendant's] evidence shows that copies of its memorandum and brochure were twice sent to [plaintiff], once in 1993, then again in 1994. This evidence created a presumption that [plaintiff] received the items that were sent, and shifted the burden of producing evidence to her."). In any case, Plaintiff's testimony that he does not recall whether he received the material does not alter the application of the mailbox rule, because testimony that one does not recall receiving an item in the mail is not adequate to rebut the presumption that the document was received by the addressee. *James v. Comcast Corp.*, No. 16-CV-02218-EMC, 2016 WL 4269898, at *2 (N.D. Cal. Aug. 15, 2016) (holding that a plaintiff's "bare denial is insufficient to show that he never received the agreement").

Plaintiff relies on two Ninth Circuit cases for the proposition that a waiver of the right to litigate in a judicial forum must be part of a knowing agreement. In *Prudential Insurance Co. of America v. Lai*, the Ninth Circuit held that there must be "at least a knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived the comprehensive statutory rights, remedies and procedural protections prescribed in Title VII and related state statutes." 42 F.3d 1299, 1304 (9th Cir. 1994). Plaintiff argues that this case is similar to *Nelson v. Cyprus Bagdad Copper Corp.*, where the Ninth Circuit held that "[a]ny bargain to waive the right to a judicial forum for civil rights claims . . . in exchange for employment or continued employment must at the least be express: the choice must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question." 119 F.3d 756, 762 (9th Cir. 1997). In *Nelson*, the plaintiff had been given an employee handbook which included within it an arbitration provision. Plaintiff signed an acknowledgement of receipt, agreeing to "read and understand" it but "did *not* agree to be bound by its

provisions."[3] *Id*. (emphasis in original). Nothing in the handbook indicated that he was waiving any rights, and nothing in the handbook or the acknowledgement put him "on notice that by not quitting his job he was somehow entering into an agreement to waive a specific statutory remedy afforded him by a civil rights statute." *Id*. at 762. Without an explicit choice, the court held, the employee did not enter into a waiver of his right to a judicial forum.

"As a general rule, silence or inaction does not constitute acceptance of an offer." *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002) (quoting *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1386 (1993). "However, 'where circumstances or the previous course of dealing between the parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent.'" *Id*. (quoting *Beatty Safway Scaffold, Inc. v. Skrable*, 180 Cal. App. 2d 650, 655 (1960). The Ninth Circuit has held that an employee agreed to be bound by an arbitration agreement where he reviewed a dispute resolution agreement that included an arbitration provision, which acknowledgement "clearly set out in writing the significance of his failure to opt out and described in detail the mechanism by which he could express his disagreement." *Id*. The agreement "communicated in detail and in writing the effect of [plaintiff's] acceptance on his right to bring claims against his employer" and "made clear that opting out of the agreement would have no effect on the employment relationship." *Id*. Finally, the agreement gave the plaintiff 30 days to review it and decide whether to opt out. *Id*. Under these circumstances, where "inaction is indistinguishable from overt acceptance," the Ninth Circuit held that the parties did strike an agreement and that the plaintiff assented to the arbitration provision by failing to exercise the right to opt out. *Id*. The California Supreme Court

---

[3] The acknowledgement provided as follows:

> I have received a copy of the Cyprus Bagdad Copper Corporation Handbook that is effective July 1, 1993 and understand that the Handbook is a guideline to the Company's policies and procedures. I agree to read it and understand its contents. If I have any questions regarding its contents I will contact my supervisor or Human Resources Representative.

*Id*. at 758.

has likewise blessed an arbitration agreement between employer and employee where the failure to return the opt-out form within 30 days amounted to assent to submit to arbitration all employment-related disputes. *Gentry v. Superior Court*, 42 Cal. 4th 443, 468 (2007), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

The agreement here is unlike the one in *Nelson*, where there was no explicit mention of the consequences of the acknowledgment form on the plaintiff's legal rights and the arbitration provision was buried in the employee handbook, but closely mirrors the facts of *Najd*. After receiving notice in the mail twice over the course of a year explaining the SIS process and informing him of his right to opt out, Plaintiff failed to return the opt-out form. The documents gave him 30 days to exclude himself from the arbitration provision and stated that if he did not want to be subject to the arbitration provision, he must return the opt-out form. Accordingly, the Court finds that Plaintiff's failure to opt out of the arbitration provision was "indistinguishable from overt acceptance." *Najd*, 294 F.3d at 1109. *See also Hicks v. Macy's Dep't Stores, Inc.*, No. C 06-02345 CRB, 2006 WL 2595941, at *3 (N.D. Cal. Sept. 11, 2006) (enforcing SIS arbitration agreement where plaintiff never signed form acknowledging receipt of SIS materials).

**B.    Unconscionability**

The Court must assess whether the arbitration agreement at issue is valid and enforceable under section 2 of the FAA, 9 U.S.C. § 2. *Ticknor v. Choice Hotels, Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir. 2001). "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996). "Federal courts sitting in diversity look to the law of the forum state in making a choice of law determination." *Ticknor*, 265 F.3d 931, 937 (citing *Sparling v. Hoffman Constr. Co., Inc.,* 864 F.2d 635, 641 (9th Cir. 1988)). Thus, this Court relies on California contract law to determine the issues raised in this action.

Under California law, the "evaluation of unconscionability is highly dependent on context."

*Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015). "If a contract is unconscionable, under California law courts may refuse to enforce it." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). To be unenforceable, the arbitration clause must be both procedurally and substantively unconscionable, but not necessarily to the same degree. *Ting v. AT & T*, 319 F.3d 1126, 1148 (9th Cir. 2003). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal 4th 83, 114 (2000).

Plaintiff argues that the arbitration agreement is unenforceable because it is both procedurally and substantively unconscionable. The Court considers each separately.

## 1. Procedural Unconscionability

Procedural unconscionability "concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999). Procedural unconscionability requires either of two factors: oppression or surprise. *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1997). Oppression "arises from an inequality in bargaining power which results in no real negotiation and an absence of meaningful choice." *Id.* at 1531. "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (citing *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1570 (2009)).

The California Supreme Court has recognized that "there are degrees of procedural unconscionability." *Gentry*, 42 Cal. 4th at 469. Specifically,

> At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. Although certain terms in these contracts may be construed strictly, courts will not find these contracts substantively unconscionable, no matter how one-sided the terms appear to be. Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced, contain a degree of procedural unconscionability even without any notable surprises, and bear within them

the clear danger of oppression and overreaching. *Id.* (internal quotations and citations omitted).

*Id.* Plaintiff argues that the contract was procedurally unconscionable both because he did not review the contract and because it was a contract of adhesion.

Each argument fails. First, Plaintiff's failure to review the contract did not render it procedurally unconscionable, for "[a]n arbitration clause within a contract may be binding on a party even if the party never actually read the clause." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012). *See also Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699, 710 (1976) (discussing, in context of arbitration agreement, the "general rule that one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument"); *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 383 (2016) (fact that a party "either chose not to read or take the time to understand these provisions is legally irrelevant"); *Rodriguez v. Sim*, No. C 08-3982 JL, 2009 WL 975457, at *6 (N.D. Cal. Apr. 10, 2009) ("The law does not require a party to read a contract or demonstrate a high level of comprehension in order to be bound, and the other party cannot coerce a reading of its terms. The law requires only that Plaintiff have had the opportunity to learn of the terms."). Plaintiff had an opportunity to review the terms of the agreement. That he did not does not render the agreement the product of a procedurally unconscionable process.

Nor was the agreement procedurally unconscionable because, as Plaintiff alleges, "it was an adhesion contract with pre-set terms." Opp. at 7. The agreement was not procedurally unconscionable, because Plaintiff had 30 days to opt out of the agreement. "Procedural unconscionability focuses on the factors of surprise and oppression," *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003), and the Ninth Circuit, applying California law, has found that arbitration clauses providing an opt-out period of sufficient duration are not procedurally unconscionable. In *Kilgore v. KeyBank, Nat. Ass'n*, the Ninth Circuit held that an arbitration provision in a promissory note that provided a 60-day period to opt out was not procedurally unconscionable. 718 F.3d 1052, 1059 (9th Cir. 2013). The court noted that it had

previously found an arbitration provision not to be procedurally unconscionable where the provision provided a 30-day window to decide to opt out. *Id.* (citing *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002)). In *Ahmed*, the Ninth Circuit found no procedural unconscionability in a situation similar to the one presented here, where the employer instituted an arbitration program, sent an information package about the program to its employees, and provided a 30-day window for employees to opt out of the program.[4] The plaintiff failed to return the opt-out form, and the court held that he "was given ample opportunity to investigate any provisions he did not understand" before deciding whether to opt out and thus was not the victim of a procedurally unconscionable arbitration provision. 283 F.3d at 1200. The 30-day window is a sufficient period to consider the arbitration provision. *See also Quiroz v. Cavalry SPV I, LLC*, 217 F. Supp. 3d 1130, 1137 (C.D. Cal. 2016) ("The Arbitration Agreement is not procedurally unconscionable because Quiroz had sixty days after he opened the account to opt out of the Arbitration Agreement but did not do."); *Jenkins v. Sterling Jewelers, Inc.*, No. 17CV1999-MMA (BGS), 2018 WL 922386, at *6 (S.D. Cal. Feb. 16, 2018) (finding no procedural unconscionability where the arbitration agreement included a 30-day opt-out window).

Though Plaintiff did not argue that the agreement was procedurally unconscionable because of the one-sided description highlighting the benefits of arbitration and the fact that the materials make clear that Defendant prefers its employees to submit to arbitration, the Court notes that other district courts in California have found the SIS program materials to have some procedural unconscionability. *See Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1136-38 (C.D. Cal. 2011) (holding that the SIS materials are procedurally unconscionable because of the one-sided description of the benefits of

---

[4] The Court recognizes that the California Supreme Court announced that it did not find the Ninth Circuit's analysis in *Ahmed* to be persuasive on unconscionability because "its brief discussion of the unconscionability issue did not consider the concealment of disadvantageous terms nor the reality that Circuit City clearly favored arbitration and was in a position to pressure employees to choose its favored option." *Gentry*, 42 Cal. 4th at 472 n.10. *See also Greer v. Sterling Jewelers, Inc.*, No. 1:18-CV-480-LJO-SKO, 2018 WL 3388086, at *4 (E.D. Cal. July 10, 2018) (discussing *Gentry*'s analysis of *Ahmed*). Nevertheless, the Ninth Circuit's analysis in *Kilgore* postdates *Gentry*, and this Court is obligated to follow *Kilgore*. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 & n.5 (9th Cir. 2016) (holding that *Ahmed* and *Kilgore* concluded that "an arbitration agreement is not adhesive if there is an opportunity to opt out of it" and that a "district court does not have the authority to ignore circuit court precedent").

13

arbitration and the clear preference for employees not to opt out of the arbitration agreement but finding that the degree of procedural unconscionability is "small"); *Jones-Mixon v. Bloomingdale's, Inc.*, No. 14-CV-01103-JCS, 2014 WL 2736020, at *7-8 (N.D. Cal. June 11, 2014) (holding that because "the materials informing Plaintiff about the Solutions SIS program are 'markedly one-sided'" and make clear that the employer prefers that its employees participate in the arbitration program, resulting in a likelihood that the "employees felt at least some pressure not to opt out of the arbitration agreement ," there was some procedural unconscionability (quoting *Gentry*, 42 Cal. 4th at 470, 472)).

Assuming that the process was "not entirely free from procedural unconscionability," *Gentry*, 42 Cal. 4th at 472, the Court finds, like the courts in *Quevedo* and *Jones-Mixon*, the degree of procedural unconscionability is small. Therefore, in order to show that the agreement is unconscionable overall requires "a greater showing of substantive unconscionability." *Quevado*, 798 F. Supp. 2d at 1138.

## 2. Substantive Unconscionability

Substantive unconscionability focuses "on overly harsh or one-sided results." *Armendariz*, 24 Cal. 4th at 114 (quotation marks and citations omitted). An arbitration clause is substantively unconscionable if "the terms of the agreement . . . are so one-sided as to shock the conscience." *Kinney*, 70 Cal. App. 4th at 1329 (emphasis altered). California courts have held that a substantively unconscionable agreement "must be 'overly harsh,' 'unduly oppressive,' 'unreasonably favorable,' or must 'shock the conscience.'" *Poublon v. C.H. Robinson* Co., 846 F.3d 1251, 1261 (9th Cir. 2017) (quoting *Sanchez*, 61 Cal. 4th at 911). "[M]utuality is the "paramount" consideration when assessing substantive unconscionability." *Pokorny v. Quixtar*, 601 F.3d 987, 997-98 (9th Cir. 2010) (citations omitted). "Agreements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability." *Id.* (internal citations and quotations omitted).

Plaintiff argues that the arbitration provision is substantively unconscionable because of the limitations on discovery, the lack of ability to recover litigation costs incurred prior to the beginning of the arbitration process, and because it is unilaterally binding. Because the Court concluded that the

arbitration agreement is minimally procedurally unconscionable, Plaintiff must demonstrate that the terms of the agreement are substantively unconscionable to a significant degree to prevail under the sliding scale rule articulated above.

### a. <u>Adequate Discovery</u>

Plaintiff argues that the arbitration agreement is substantively unconscionable because the limited discovery works to his disadvantage, because the relevant materials are in Defendant's possession. Under the SIS program, permitted discovery includes document disclosures, up to three depositions for each side, and up to 20 interrogatories to the opposing party (each of which may include a document request). The arbitrator is also empowered to authorize more discovery.

In an alternative dispute resolution proceeding designed to resolve a FEHA dispute, parties are entitled "to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review." *Armendariz*, 24 Cal. 4th at 106. "Adequate discovery, however, does not mean unfettered discovery." *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 787 (9th Cir. 2002). Parties may "agree to something less than the full panoply of discovery provided in [a civil action]." *Armendariz*, 24 Cal. 4th at 105-06. "Ultimately it is up to the arbitrator and the reviewing court to balance the need for simplicity in arbitration with the discovery needs of the parties." *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 184 (2002).

The Court finds that the applicable discovery procedures under the SIS program are reasonable and do not "shock the conscience." *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1109, 1119 (C.D. Cal. 2015) (collecting cases and concluding that substantially similar discovery procedures (initial disclosures, twenty interrogatories, and three depositions, with additional discovery available upon showing of "substantial need") did not "unfairly or unconscionably limit a party's ability to conduct discovery"); *see also Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 983 (2010) (reversing finding that program providing for deposition of one natural person and all expert

witnesses was unconscionable, noting that "arbitration is meant to be a streamlined procedure. Limitations on discovery, including the number of depositions, is one of the ways streamlining is achieved."); *Burnett v. Macy's W. Stores, Inc.*, No. 1:11-CV-01277 LJO, 2011 WL 4770614, at *4 (E.D. Cal. Oct. 7, 2011) (finding that the SIS program satisfied the requirements of *Armendariz*, including requirement of "more than minimal discovery"); *Mercuro*, 96 Cal. App. 4th at 183 (finding no substantive unconscionability in provision of arbitration agreement limiting parties to a total of 30 discovery requests of any kind and granting arbitrator power to order further discovery upon a showing of good cause). Courts "assume that the arbitrator will operate in a reasonable manner in conformity with the law." *Dotson*, 181 Cal. App. 4th at 984. The discovery provisions in the arbitration agreement provide more than minimal discovery and, standing alone, do not render it unconscionable. Moreover, Plaintiff has not explained why the discovery procedures are inadequate as applied to the dispute in this case. *Baxter v. Genworth N. Am. Corp.*, 16 Cal. App. 5th 713, 729 (2017) (noting that discovery restrictions did not render agreement unconscionable where an employee "failed to offer any showing that the default levels of discovery would be inadequate").

### b.     Recovery Of Litigation Costs

Plaintiff argues that the arbitration agreement is substantively unconscionable because he is unable to recover costs incurred prior to the arbitration process, even though the agreement permits recovery of the costs of litigation during the arbitration process if he prevails. Plaintiff points to no case law or other authority in support of this argument, and the argument fails. The Ninth Circuit has held that where a party who is subject to an arbitration agreement that makes arbitration of disputes mandatory but nevertheless violates the agreement by including arbitrable claims in a court action, "[a]ny extra expense incurred as a result of the [plaintiff's] deliberate choice of an improper forum, in contravention of their contract, cannot be charged to" the defendant. *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 698 (9th Cir. 1986) (holding, in analysis of whether the defendant had waived the right to invoke the arbitration provision more than three years after the action was filed, that costs incurred

litigating case prior to invocation of arbitration provision did not establish prejudice). That the arbitration agreement does not provide for recovery of costs incurred in litigation that the plaintiff chose to undertake prior to entering into the arbitration proceedings outlined in the agreement is not "so one-sided as to shock the conscience." *Kinney*, 70 Cal. App. 4th at 1329.

### c. **Mutuality**

Plaintiff also argues that "Defendant was not required to go through the process of arbitration to resolve Plaintiff's employment claims because Defendant attempted to circumvent Plaintiff's early rights to arbitration by omitting arbitration information and offering nominal settlement of the claim without providing notice of the right to arbitrate." Opp. at 7-8. To the extent this is a mutuality objection, it is without merit. The agreement provides that both Macy's and the employee are subject to the arbitration provision: "Arbitration shall apply to any and all such disputes, controversies or claims whether asserted by the Associate against the Company and/or against any employee, officer, director or alleged agent of the Company. Arbitration shall also apply to any and all such civil disputes, controversies or claims asserted by the Company against the Associate." ECF No. 12-2, Ex. A at 6. This language applies both to Plaintiff and Defendant. Plaintiff's objection that Defendant apparently attempted to settle the dispute without proceeding to arbitration is likewise unavailing. The arbitration agreement provides, in a section labeled "Article 17 – Settlement," that "[t]he parties may settle their dispute at any time without involvement of the Arbitrator." *Id*. at 18. Defendant's attempt to settle the dispute without invoking the arbitration provision does not render the arbitration provision unilateral and substantively unconscionable.

An agreement is unconscionable under California law only if it is both procedurally and substantively unconscionable. Because there is only a modest degree of procedural unconscionability and Plaintiff has not shown that the agreement is substantively unconscionable, the Court finds that the arbitration agreement is valid and enforceable.

### C. **Whether Within Scope Of Contract**

Plaintiff argues that this dispute falls outside the scope of the arbitration agreement, which applies only to disputes between Plaintiff and Federated Department Stores, Inc.  Article 23 of the agreement provides as follows:

> Should Federated sell a subsidiary or operating unit of a subsidiary (through the sale of stock or substantially all of its assets) and such transaction includes transferring employees to another third-party, a transferring Associate's agreement to arbitration shall remain in effect as to any employment-related claims arising prior to such sale but as such agreement shall apply in those circumstances only to a claim against Federated and shall be null and void as to such third-party entity.

ECF No. 12-2, Ex. A at 20.  Plaintiff asserts that because the agreement applies only to claims against Federated, and Federated transferred operations to Macy's West Stores, Inc., the arbitration agreement does not cover his claims here, which he brings against Macy's.

Plaintiff's argument rests on the erroneous assumption that Federated sold its operations.  While it did change its name, it did not sell its operations.  In 2007, "Federated Department Stores, Inc. changed its name to Macy's, Inc."  Ripak Decl. ¶ 3.  Plaintiff was employed by the same entity, Macy's West Stores, Inc., during the entirety of his employment at Macy's, from January of 2001 until January of 2015.  *Id.* ¶ 21.  Accordingly, Article 23 of the agreement does not apply to remove Plaintiff's claim from the arbitration agreement.

## D. **Waiver**

Plaintiff asserts that Defendant waived the right to arbitrate these claims by failing to invoke the arbitration provision following Plaintiff's termination in January of 2015 until it moved to compel arbitration on July 17, 2018.  In the intervening time, Defendant failed to invoke the arbitration provision when Plaintiff filed a complaint with the state Department of Fair Employment and Housing in 2015, when Plaintiff filed suit in September of 2017, when Defendant removed the case to this Court in January of 2018, and only invoked the provision for the first time in April of 2018.

A written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  But the "right to

arbitration, like any other contract right, can be waived." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009). "[W]aiver of the right to arbitration is disfavored because it is a contractual right, and thus any party arguing waiver of arbitration bears a heavy burden of proof." *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988) (citations omitted). Accordingly, "[a]ny examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986); *see also id.* ("Waiver of a contractual right to arbitration is not favored."). "In the Ninth Circuit, arbitration rights are subject to constructive waiver if three conditions are met: (1) the waiving party must have knowledge of an existing right to compel arbitration; (2) there must be acts by that party inconsistent with such an existing right; and (3) there must be prejudice resulting from the waiving party's inconsistent acts." *Id.* at 694. Plaintiff bears a "heavy burden of proof" in showing that these elements are met. *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270-71 (9th Cir.), *opinion amended on denial of reh'g*, 289 F.3d 615 (9th Cir. 2002).

### 1. Whether Defendant Had Knowledge Of Its Right To Compel Arbitration

As to the first factor, Defendant does not dispute that it had knowledge of its right to compel arbitration from the inception of this litigation. Indeed, Defendant stated its intent to reserve its right to compel arbitration in its Answer and Defenses to Plaintiff's Complaint, ECF No. 1 at PDF p. 36, and in the parties' joint scheduling report filed in April of 2017, ECF No. 6 at 3. The first factor is met.

### 2. Whether Defendant Took Actions Inconsistent With The Right To Arbitrate

Plaintiff argues that Defendant's decision to remove the case to federal court and to litigate the matter in federal court for months prior to moving to compel arbitration is inconsistent with Defendant's right to arbitrate. Defendant counters that a settlement offer is not inconsistent with an agreement to arbitrate and that it could not have moved to compel arbitration until Plaintiff filed suit. Defendant was served with the lawsuit on December 27, 2017, removed to federal court within a month, and moved to

compel without engaging in merits-based discovery or seeking merits-based relief.

"There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate." *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). Courts have determined that "a party's extended silence and delay in moving for arbitration may indicate a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims,' which would be inconsistent with a right to arbitrate." *Id.* (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988)). In *Van Ness Townhouses*, the party seeking to compel arbitration had "chose[n] . . . to litigate actively the entire matter—including pleadings, motions, and approving a pre-trial conference order—and did not move to compel arbitration until more than two years after the appellants brought the action." 862 F.2d at 759 (9th Cir. 1988). Under those circumstances, where the party moved to compel arbitration after two years of litigation and a mere three months before the trial was set to commence, the Ninth Circuit held that the party acted inconsistently with the right to arbitrate. Similarly, in *Martin*, the moving party had participated actively in the litigation without ever claiming a right to arbitrate in any of their pleadings. 829 F.3d at 1125. *See also Kelly v. Pub. Util. Dist. No. 2 of Grant Cty.*, 552 F. App'x 663, 664 (9th Cir. 2014) ("PUD and Port waited eleven months after the lawsuit was filed to demand arbitration, actively litigating the case in district court. The parties conducted discovery and litigated motions, including a preliminary injunction and a motion to dismiss. Such activity is inconsistent with preserving the right to compel arbitration."). By contrast, "numerous courts have held that merely removing a case to federal court, where the defendant has not engaged in protracted litigation or obtained discovery, does not give rise to waiver of the right to arbitrate because removal alone is not sufficiently inconsistent with the right to seek arbitration and does not give rise to prejudice." *DeMartini v. Johns*, No. 3:12-CV-03929-JCS, 2012 WL 4808448, at *5 (N.D. Cal. Oct. 9, 2012).

Defendant did not engage in acts inconsistent with the right to arbitration. Defendant invoked as the first defense in its answer filed in state court two days prior to removal that Plaintiff's claims were

subject to arbitration.  It did not seek any rulings on the merits prior to filing this motion to compel arbitration.  It took Plaintiff's deposition for the limited purpose of engaging in discovery about the arbitration agreement.  *See* Paxton Depo. at 26:3-6.  Under these circumstances, where Defendant answered, invoking the arbitration provision, removed to federal court, engaged in discovery limited to the validity of the arbitration provision, and filed a motion to compel arbitration without seeking any other relief on the merits, the Court finds that Defendant has not undertaken acts inconsistent with the right to arbitrate.  *See Jurado v. Schutz 655 LLC*, No. 216CV05996CASRAOX, 2017 WL 600076, at *4 (C.D. Cal. Feb. 13, 2017) (holding that the filing of an answer invoking the arbitration agreement and removing to federal court, before moving to compel arbitration at the early stages of litigation without filing other motions, are not acts inconsistent with the right to compel arbitration); *Madrigal v. New Cingular Wireless Servs., Inc*., No. 09-CV-00033-OWW-SMS, 2009 WL 2513478, at *13 (E.D. Cal. Aug. 17, 2009) ("Defendants' exercise of their right to remove the state-court action to federal court and filing an answer with counterclaims (without litigating them) is not sufficiently inconsistent with their right to arbitrate."); *Creative Telecommunications, Inc. v. Breeden*, 120 F. Supp. 2d 1225, 1232 (D. Haw. 1999) ("Courts have found that the filing of a complaint, an answer, a counterclaim or a third-party complaint does not waive the right to pursue arbitration.") (collecting cases).

Defendant's actions do not evince a "a "conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims." *Van Ness*, 862 F.3d at 759.  Nevertheless, the Court proceeds to the third prong to determine whether, assuming that Defendant did undertake inconsistent acts, those acts resulted in prejudice to Plaintiff.

### 3.     Whether The Delay Has Prejudiced Plaintiff

Plaintiff asserts that he has been prejudiced by Defendant's delay in waiting three years between the filing of Plaintiff's grievance in 2015 and invoking the arbitration agreement in 2018.

Generally, courts will not find prejudice where the party opposing the motion to compel arbitration has expended only litigation and court costs, unless the parties have already conducted

significant discovery that would be unavailable in an arbitration, or if the matter is on the eve of trial. *See Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1132 (C.D. Cal. 2011) ("prejudice typically is found only where the petitioning party's conduct has substantially undermined the important public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration" (internal citations and quotation marks omitted)); *see also Britton v. Co-Op Banking Grp.*, 916 F.2d 1405, 1413 (9th Cir. 1990) (costs incurred in pursuing litigation should not be counted against defendant's effort to arbitrate).

Here, Plaintiff asserts in conclusory fashion that he has been prejudiced, citing case law for the idea that arbitration loses its value if the parties are forced to expend time and resources litigating the action in court before proceeding to arbitration. However, it does not appear that the parties have conducted extensive discovery in this case. Plaintiff has sat for a deposition for the limited purpose of questioning about the arbitration provision. Likewise, the Court has not reached the merits of this case in its rulings to date. *See Ontiveros v. Zamora*, No. Civ. S-08-567 LKK, 2013 WL 593403, at *10 (E.D. Cal. Feb. 14, 2013) ("Waiver does not occur by mere participation in litigation; there must be judicial litigation of the merits of arbitrable issues, although waiver could occur prior to a judgment on the merits if prejudice could be demonstrated." (internal citations and quotation marks omitted)).

Moreover, Defendant made it clear both in its answer and in the joint scheduling report filed that the parties filed in April of 2018 that it believes it has a right to compel arbitration. *See* ECF Nos. 1, 6. Therefore, Plaintiff was on notice that Defendant could move to compel arbitration and proceeded "at h[is] own peril." *Lagrone v. Advanced Call Ctr. Techs., LLC*, No. C13–2136-JLR, 2014 WL 4966738, at *9 (W.D. Wash. 2014). Plaintiff has not met his "heavy burden" of demonstrating that he was prejudiced by the delay and that Defendant thereby waived its right to pursue arbitration. *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009) (internal quotation marks and citations omitted).

# V. <u>CONCLUSION AND ORDER</u>

For the reasons set forth above, the motion to compel arbitration is **GRANTED**. This action is **DISMISSED WITHOUT PREJUDICE** in the event that further proceedings should be necessary following arbitration.

IT IS SO ORDERED.

Dated:   **September 7, 2018**          **/s/ Lawrence J. O'Neill**
                                        UNITED STATES CHIEF DISTRICT JUDGE